A91A0839. BLUM v. AIR CENTER GWINNETT, INC.
(411 SE2d 88)

McMURRAY, Presiding Judge.

Plaintiff Blum alleges that he entrusted his airplane to defendant Air Center Gwinnett, Inc., for storage and security, and that defendant allowed some unknown party to pillage, damage and remove parts from the aircraft. Plaintiff appeals the grant of summary judgment to defendant. *Held*:

In 1976 or 1977, plaintiff arranged with defendant's predecessor, Roman Aviation, to have his airplane inspected and flown from another airport to the Gwinnett County Airport. Plaintiff also entered

into an oral agreement with an agent of defendant's predecessor that, in exchange for a fee, it would exercise normal diligence in protecting the airplane against unauthorized use and other harm so long as the airplane was tied down at Gwinnett County Airport. For a year or two after the move, plaintiff sometimes flew the airplane. When not in use and after plaintiff ceased flying it, the airplane was tied down at the Gwinnett County Airport.

While there was never any written contract between plaintiff and defendant, or its predecessor, they charged a tie down fee for most of the period plaintiff's airplane was located at Gwinnett County Airport. Plaintiff was last billed by defendant's predecessor on September 30, 1986, apparently for the final quarter of 1986. Shortly thereafter, ownership of the predecessor corporation changed. The nature of the succession of the business to defendant is not shown on the record and for purposes of summary judgment we presume that defendant succeeded to the rights and obligations of the predecessor corporation. Defendant continued to bill plaintiff for the tie down for the first two months of 1987 and enclosed a tie down agreement for plaintiff's signature which contained a provision absolving defendant of responsibility for theft or damage to a customer's airplane. When plaintiff did not respond to these mailings defendant ceased billing plaintiff for tie down fees. Plaintiff was not billed for services rendered after February 1987, although he continued to be billed for charges accrued prior to that date. If this cessation of billing for tie down fees while plaintiff's airplane remained on the premises appears anomalous it might be explained by evidence that, as early as 1980, plaintiff's airplane had been moved to and remained at a location not leased by or controlled by defendant, or its predecessor. In this connection, we note that there is no evidence that plaintiff was aware that the location to which his airplane had been removed was not a portion of the premises of defendant or its predecessor. Plaintiff paid the fees for which he was billed, albeit generally not in a timely fashion.

Over the period of years that followed plaintiff's cessation of flying the airplane, he would go to the airport and check on it approximately once every three months. The airplane was locked and plaintiff had the key. At the location where the airplane had been tied down for several years "anybody who wanted to could just walk right up to it." In October of 1988 plaintiff discovered that the airplane had been cannibalized.

Plaintiff relies on the obligations arising from the oral contract of 1976 or 1977. Defendant would avoid that contract on several theories. Defendant contends the oral contract is unenforceable since it is an agreement that is not to be performed within one year from the making thereof and thus must be in writing pursuant to OCGA § 13-

5-30 (5) in order to be binding. However, such is not correct since this statute of frauds provision is not applicable to an agreement for an indefinite period terminable at will or where there is a possibility of performance in one year. *Vitner v. Funk*, 182 Ga. App. 39, 42 (2), 43 (354 SE2d 666); *Gatins v. NCR Corp.*, 180 Ga. App. 595, 598 (349 SE2d 818). Defendant's reliance upon *Yarborough v. Hi-Flier Mfg. Co.*, 63 Ga. App. 725 (12 SE2d 133) is misplaced as that case may be distinguished on the facts since it involves a contract which provided that it should continue from year to year unless terminated pursuant to a condition subsequent, in the nature of a defeasance provision. See *White v. Simplex Radio Co.*, 188 Ga. 412, 415 (3 SE2d 890).

Defendant further contends that the mailing of the tie down agreement with terms incompatible with the oral contract should be viewed as notice to plaintiff of a termination of the oral agreement. This contention presumes delivery of the letter to plaintiff. "Before any presumption arises that a letter has been received through the mails it must be shown that 'the letter (1) was written; (2) was properly addressed to the party; (3) contained the correct postage; and (4) was duly mailed in the United States Post Office.' [Cits.]" *Edmondson v. Air Svc. Co.*, 123 Ga. App. 263 (2) (180 SE2d 589). A presumption of plaintiff's receipt of the letter from defendant does not arise under the evidence in the case sub judice since there is no evidence that the letter was properly addressed to plaintiff and contained correct postage.

Defendant also contends that the cessation of the billing for the tie down fee subsequent to February 1987 placed plaintiff on notice of the termination of the oral contract. However, in our view this change presents at most a question of fact as to whether it amounted to reasonable notice of termination. Defendant continued to bill plaintiff for the previously accrued charges and there is no indication in the record that these continued bills from defendant clearly indicated the cessation of the tie down fees. This combined with the tardy payment schedule which had been the custom in regard to plaintiff's account over the years with both defendant and its predecessor precludes any conclusion as a matter of law that the cessation of billing for the tie down fee amounted to reasonable notice to plaintiff of the termination of the oral contract.

While there may have initially been a bailment created when defendant's predecessor assumed possession of the airplane in order to accomplish the inspection and transport of the airplane to Gwinnett County Airport any such bailment terminated upon return of possession of the airplane to plaintiff. The relationship which continued under the portion of the oral contract concerning the tie down of the airplane at the airport may not properly be characterized as a bailment since plaintiff retained access to the airplane. *Mossie v. Pilgrim*

*Self-Service Storage*, 150 Ga. App. 715 (2) (258 SE2d 548).

Under the particular facts and circumstances of the case sub judice, the oral contract is a sufficient predicate for a breach of contract claim and since defendant has failed to disprove any element of plaintiff's claim by uncontroverted evidence, we hold that the state court erred in granting defendant's motion for summary judgment. *Corbitt v. Harris*, 182 Ga. App. 81, 83 (354 SE2d 637). We do not reach the issue of whether a misfeasance by defendant in the performance of its duties under the oral contract will support a tort action. However, see in this regard *Bowdish v. Johns Creek Assoc.*, 200 Ga. App. 93, 94 (3) (406 SE2d 502); *Parker Motor Co. v. Spiegal*, 33 Ga. App. 795, 796 (2) (127 SE 797).

*Judgment reversed. Sognier, C. J., concurs. Andrews, J., concurs in the judgment only.*

DECIDED SEPTEMBER 25, 1991.

George P. Graves, for appellant.
Butler, Wooten, Overby & Cheeley, Robert D. Cheeley, Patrick A. Dawson, for appellee.