## A93A1375. BLUM v. RES ASSOCIATES, LTD.
### (439 SE2d 712)

COOPER, Judge.

Appellant appeals the trial court's grant of directed verdict in favor of appellee.

Appellant stored his airplane at Gwinnett County Airport from 1976 or 1977 until 1988 when he discovered the plane had been cannibalized. In December 1988, he filed suit against Air Center Gwinnett (Air Center), the operator of the airport from 1986 until 1991, essentially alleging it breached the oral contract he had to store and secure his plane. The trial court granted summary judgment to Air Center and this court reversed, finding the oral contract was a sufficient predicate for a breach of contract claim and that Air Center had failed to disprove any element of that claim. See *Blum v. Air Center Gwinnett*, 201 Ga. App. 313 (411 SE2d 88) (1991). Appellant subsequently amended his complaint to add as a defendant RES Associates of Georgia, Ltd., (RES) which took over operation of the airport in 1991. Air Center entered into a consent judgment with appellant and the case went to trial as to RES only.

Evidence adduced at trial showed that in February 1979, Gwinnett County Airport Authority (the Authority) entered into a lease agreement with Roman Aviation to lease and operate the airport. This lease was amended several times and Air Center ultimately became the lessee and operator of the airport in late 1986. In April 1991, the Authority and RES entered into an agreement for RES to lease and operate the airport. At this same time, the Authority and RES executed another amendment to the lease agreement providing, inter alia, that Air Center would assign its lease to RES. RES and Air Center executed an Asset Purchase Agreement for RES to purchase certain assets used by Air Center in operating the airport. Paragraph 1(k) of the Asset Purchase Agreement provided: "Except as to obligations of the Seller specifically assumed by the Buyer pursuant to the terms of this Agreement, it is agreed that the FBO Assets shall be sold, conveyed, transferred and assigned to the Buyer on the Closing Date free and clear of all liens, tax liens, charges, judgments, encum-

brances, debts and liabilities, whatsoever, and that the Buyer does not assume, accept or undertake any obligations, duties, debts or liabilities of any kind whatsoever, including any asserted or unasserted claims, liabilities, or assessments, contingent or otherwise." Paragraph 4 of the Agreement provided: "The Buyer shall assume the liabilities and obligations of the Seller under the Operating Agreements, Equipment Leases, Tenant Agreements, Parts Dealership and Fuel Dealership Agreements, the Fuel Servicing Agreements, the Work Orders and the additional liabilities and obligation of the Seller ('Other Liabilities Assumed'), if any, specified in Exhibit N attached hereto (all of such Agreements and Work Orders and Other Liabilities Assumed are to be assumed by the Buyer *only as of and with respect to periods following the Closing Date*). The Buyer shall not assume any other liabilities or obligations of the Seller whatsoever." (Emphasis supplied.)

Terry Britt, the general manager of RES, testified that the reference to tenant agreements in the Asset Purchase Agreement referred to active tenant agreements. He further testified that RES had been careful not to assume any outstanding liabilities of Air Center since Air Center had encountered financial difficulty in managing the airport. He also testified that none of the shareholders, officers, or directors of RES were shareholders, officers, or directors of Air Center. Appellant testified that he sold his airplane for scrap in 1988. He did not contend that he had a contract with RES and first became aware of its existence when he saw its name in documentation obtained by his counsel.

At the close of the evidence, both parties moved for a directed verdict. The trial court granted RES's motion for directed verdict and denied appellant's motion and appellant filed this appeal.

1. Appellant alleges the trial court erred in granting RES's motion for directed verdict and in denying his own motion for directed verdict. Specifically, appellant argues that RES is liable to him because: (1) he has a claim for breach of contract against Air Center under the original lease to operate the airport and RES is a successor lessee under that lease and (2) RES entered into an asset purchase agreement with Air Center in which it assumed Air Center's liabilities and obligations under the operating agreements and tenant agreements, which included Air Center's responsibility to appellant for the damage suffered to his plane.

"A motion for directed verdict is to be granted only where there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions, demands a particular verdict. OCGA § 9-11-50 (a)." (Citations and punctuation omitted.) *Nottingham Co. v. Resource Materials Corp.*, 210 Ga. App. 128, 131 (3) (435 SE2d 447) (1993). "The evidence is construed most favorably to

the nonmovant." *McDevitt & Street Co. v. K-C Air Conditioning Svc.*, 203 Ga. App. 640, 644 (3) (418 SE2d 87) (1992).

"Generally, a purchasing corporation does not assume the liabilities of the seller unless: (1) there is an agreement to assume liabilities; (2) the transaction is, in fact, a merger; (3) the transaction is a fraudulent attempt to avoid liabilities; or (4) the purchaser is a mere continuation of the predecessor corporation." (Citations omitted.) *Howard v. APAC-Ga.*, 192 Ga. App. 49 (383 SE2d 617) (1989); see *Carswell v. Nat. Exchange Bank of Augusta,* 165 Ga. 351, 357 (140 SE 755) (1927) (where one corporation purchases assets of another, the duties and obligations are as set up in the contract between them).

Appellant's claim that RES has assumed Air Center's liability to him simply because it is a successor lessee under the lease to operate the airport is without merit. Appellant appears to base this claim on the ground that he has a claim for breach of contract against Air Center under its lease to operate the airport and that RES is thus liable to him as the successor to that lease. However, we note that appellant claimed in his previous appeal that Air Center was liable to it because it allegedly breached its oral contract with him to store and secure his plane. See *Blum,* supra at 314. In any event, the evidence is undisputed that appellant was not a party to the original lease agreement or any of the amendments thereto and appellant points to no provision in the lease agreement RES executed with the Authority whereby it assumed any liabilities Air Center may have had to appellant. See *Howard,* supra.

Appellant's claim that RES specifically assumed Air Center's liabilities to him in the Asset Purchase Agreement it entered into with Air Center is equally without merit. Since appellant's plane was removed from the airport in 1988, his oral tenant agreement with Air Center clearly ended three years before RES executed the Asset Purchase Agreement and took over operation of the airport. As set forth above, RES agreed in the Asset Purchase Agreement to assume Air Center's liabilities and obligations under, inter alia, the operating agreements and tenant agreements "only as of and with respect to periods following the Closing Date," i.e., the date on which RES took over as operator of the airport. It is clear from this language that RES was agreeing to assume Air Center's liabilities and obligations under tenant agreements in existence on the date it took over operation of the airport. Such a construction is further confirmed by the general manager's testimony that the reference to tenant agreements in the Asset Purchase Agreement referred to active tenant agreements. Thus, RES as the successor lessee under the lease was "assum[ing] [only] those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations

of the seller corporation." (Citations omitted.) *Howard,* supra at 51. Thus, because RES only agreed to assume Air Center's obligations and liabilities under current tenant agreements as of the date it took over operation of the airport, RES did not assume any liabilities Air Center may have had to appellant under an oral tenant agreement which ended three years earlier. The trial court did not err in granting RES's motion for directed verdict and denying appellant's motion for same.

2. In light of our holding in Division 1, we need not reach appellant's remaining enumerations of error.

*Judgment affirmed. Beasley, P. J., and Smith, J., concur.*

DECIDED DECEMBER 2, 1993 —
RECONSIDERATION DENIED DECEMBER 20, 1993 — 

*George P. Graves, E. Graydon Shuford,* for appellant.
*Webb, Tanner & Powell, Andrew R. Mertz, Ralph L. Taylor III,* for appellee.