George BUSSEY, Zaneta Bussey, Latrelle Pollard, Virginina Bussey, Lakesha Walker, Individually, Jointly and as Representatives of Estate of George Sanders, Deceased, Plaintiffs,

v.

MODERN WELDING COMPANY[1]; Modern Welding Company of Georgia, Inc.; Dresser Industries, Inc.; Black & Veatch, Pritchard, Inc.; BP Amoco Chemical Company; and John Does 1 through 100, Defendants.

Civil Action No. CV 102–171.

United States District Court, S.D. Georgia, Augusta Division.

Feb. 13, 2003.

Richard H. Middleton, Jr., Suggs, Kelly & Middleton, Savannah, GA, Jane S. Brown, Provost Umphrey Law Firm, LLP, Beaumont, TX, for plaintiff.

---

1. The corporate name of this defendant in the caption appears incorrect. The corporation "Modern Welding Company" ceased to exist in December of 1992, as explained in greater detail in Section I.B. *infra*. The Court believes that Plaintiffs intended to sue the corporation "Modern Welding Company, Inc.," an existing Kentucky corporation owning several subsidiaries including Defendant Modern Welding Company of Georgia, Inc. Hereinafter, this defendant will be referred to as Modern Welding Company, Inc. or "MWC Inc.".

Charles R. Beans, Hawkins & Parnell, LLP, Atlanta, GA, for Modern Welding Co., Modern Welding Co. of Georgia, Inc., defendants.

Thomas William Tucker, Dye, Tucker, Everitt, Long & Brewton, PC, Augusta, GA, for Dresser Industries, Inc, defendant.

Stevan A. Miller, Drew, Eckl & Farnham, LLP, Atlanta, GA, for Black & Veatch, Pritchard, Inc., defendant.

George R. Hall, Patrick J. Rice, Hull, Towill, Norman, Barrett & Salley, PC, Augusta, GA, Eric John Sharon, Webb, Zschunke, Miller & Dikeman, LLP, Atlanta, GA, for BP Amoco Chemical Co., defendants.

### ORDER

BOWEN, Chief Judge.

In the captioned matter, Plaintiffs have moved to remand the case to the Superior Court of Richmond County. For the following reasons, Plaintiffs' Motion to Remand is **GRANTED.**

### I. *BACKGROUND*

This product liability case arises out of a deadly explosion which occurred on March 13, 2001, at the BP Amoco Polymers, Inc. plant in Augusta, Georgia. (Compl. ¶ 20, CV 102–030.) The explosion killed three men, including the decedent herein, George Sanders.[2] The explosion allegedly originated in a pressure vessel during the manufacture of high-performance plastics. (*Id.* ¶¶ 21, 26.) The design and manufacture of the pressure vessel is at issue in the case.

This case was previously removed to this Court, but it was remanded on June 19,

2002. Thereafter, Plaintiffs added another defendant in state court, and the case was removed again. The procedural background and the pertinent facts regarding this Court's removal jurisdiction are set forth below.

### A. *The Original Complaint.*

The original complaint in this case was filed in the Superior Court of Richmond County on October 15, 2001. Plaintiffs named four corporate parties as defendants: Modern Welding Company, Inc. ("MWC Inc.")[3], Modern Welding Company of Georgia, Inc. ("MWCG"), Dresser Industries Inc., and Black & Veatch, Pritchard, Inc. (*See* Compl., CV 102–030.)[4] Of these corporate defendants, only Modern Welding Company of Georgia, Inc. is a resident of Georgia. Accordingly, the complaint on its face did not allow for removal. *See* 28 U.S.C. § 1441(b) (providing that diversity cases are "removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought").

On March 6, 2002, over four months after the complaint was filed, Defendant Black & Veatch, Pritchard, Inc. ("BVP") removed the case to this Court despite the presence of the Georgia corporation, MWCG. In its removal petition, Defendant BVP claimed that Plaintiffs fraudulently joined MWCG. It further claimed that it did not become aware of the jurisdictional facts to assert fraudulent joinder until certain depositions were taken on February 11, 2002. Defendant BVP claimed that these depositions revealed the jurisdictional facts regarding the corporate reorgani-

---

**2.** The companion case of *Kohl v. Modern Welding Company,* CV 102–178, which is also before this Court on removal, was brought on behalf of the other two decedents.

**3.** *See* n. 1 *supra.*

**4.** References are necessarily made to pleadings and documents in the first removed case, which bears a different civil action number, CV 102030. Such references are so indicated.

zation of Modern Welding Company, the corporation that manufactured the pressure vessel, which put it on notice of the fraudulent joinder of MWCG. (*See* Notice of Removal, CV 102–030 [Doc. No. 1].)

On June 19, 2002, the Court remanded the case upon a finding that Defendant BVP's removal petition was untimely. Specifically, I found that the jurisdictional facts regarding the corporate reorganization of Modern Welding Company were a matter of public record and, in fact, had been set out in the answer of the "Modern Welding" defendants on November 7, 2001. Thus, the removal petition filed in March 2002 was untimely. (*See* Order of June 19, 2002, CV 102–030 [Doc. No. 29].)

The corporate reorganization of Modern Welding Company, and specifically, when the corporate defendants knew the facts pertaining to the reorganization, is of paramount importance to the issues before the Court on the present motion to remand. Consequently, more detail concerning the corporate reorganization of Modern Welding Company is necessary.

B. *The Corporate Reorganization of Modern Welding Company.*

The pressure vessel at issue was manufactured by Modern Welding Company and sold to the BP Amoco Polymers, Inc. plant in 1991. At the time, Modern Welding Company was a Kentucky corporation with several manufacturing plants throughout the country.[5] The pressure vessel at issue in this case was manufactured at the Augusta, Georgia plant. (Aff. of Douglas A. Wetzel, ¶¶ 3, 5, Ex. B to the Notice of Removal; Dep. of Phil Grimm, at 24, 35–36, CV 102–030.)

In December 1992, subsequent to the sale of the pressure vessel to BP Amoco, Modern Welding Company became Modern Welding Company of Owensboro, Inc., pursuant to a corporate reorganization. (Wetzel Aff. ¶ 6; *information also available on-line at* **http://www.sos.state/ky.us.**) As part of the corporate reorganization, a new holding company was created called Modern Welding Company, Inc., a Kentucky corporation. Also, each manufacturing facility was separately incorporated into a subsidiary of the newly formed Modern Welding Company, Inc. Thus, the manufacturing plant in Augusta, Georgia became the corporate entity, Modern Welding Company of Georgia, Inc., a Georgia corporation. (Wetzel Aff. ¶¶ 7–8.)

At present, Modern Welding Company of Owensboro, Inc., and Modern Welding Company of Georgia, Inc., are wholly-owned subsidiaries of Modern Welding Company, Inc. (Grimm Dep. at 11–12.) In this case, Plaintiffs have sued the Kentucky parent corporation, Modern Welding

---

**5.** The parties have consistently interchanged the names of the "Modern Welding" companies throughout their pleadings only to cause great confusion. As discussed previously, Plaintiffs named a corporate entity that no longer exists when they named Modern Welding Company. Often, the parties simply use nicknames such as "Modern" or "Modern Welding" to refer to a company.

Most egregiously, the "Modern Welding" defendants have stated in their briefs that the pressure vessel was sold by Modern Welding Company, Inc. in 1991. (*See, e.g.,* Defs.' Brf. Supp. Mot. for Summ. J. at 5.) They also state that in December of 1992, Modern Welding Company, Inc. changed its name to Modern Welding Company of Owensboro, Inc. (*Id.*) Modern Welding Company, Inc. did not exist in 1991. The only relevant corporate entity that existed in 1991 is Modern Welding Company. The Court verified the names of these corporate entities through the Kentucky Secretary of State's Office, *available on-line at* **http://www.sos.state/ky.us.**

Counsel for all parties have been careless in their handling of important nomenclature. Such inattention to detail is inexcusable, particularly where legal issues in the case turn on the corporate history and structure of the companies involved.

Company, Inc. ("MWC Inc."), and the Augusta subsidiary, Modern Welding Company of Georgia, Inc. ("MWCG"), neither of which existed as a corporate entity in 1991. However, the company that manufactured the pressure vessel, Modern Welding Company, still exists but under the name Modern Welding Company of Owensboro, Inc., a Kentucky corporation. (Wetzel Aff. ¶ 6.). Modern Welding Company of Owensboro, Inc. has not been named as a defendant in this action.

During the prior removal proceedings, Defendants contended that certain deposition testimony put them on notice that Modern Welding Company of Owensboro, Inc. is the proper party to the case. This Court, however, has determined that Defendants were put on such notice before the depositions were taken. (*See* Order of June 19, 2002.)

Upon service of the original complaint, Defendants MWC Inc. and MWCG filed an answer to Plaintiffs' complaint in the Superior Court of Richmond County, in which they state as follows:

> Defendants [MWC Inc. and MWCG] are improperly joined in this litigation. The subject product, a pressure vessel ..., was manufactured in 1991 by an entity called Modern Welding Company, Inc. ("MWC") (sic).[6] This Kentucky corporation operated plants in various locations, including Augusta, Georgia. In December of 1992, a corporate reorganization took place. By amendment of its articles of incorporation, the name of MWC was changed to MWC of Owensboro, Inc. A new holding company called MWC, Inc., was formed. Finally, a number of separate regional operating companies, including MWC of Georgia, Inc., were formed. Therefore, neither of the named MWC defendants are the proper entity to be sued in this case. . . .

---

**6.** *See* n. 1 *supra.* This paragraph in the Answer of the Modern Welding defendants *is*

(Ans. of Defs. MWC Inc. & MWCG ¶ 1, CV 102–030.) This answer was served on all defendants on November 7, 2001. Thus, on November 7, 2001, at the very latest, all defendants in the original action were on notice that MWCG may have been fraudulently joined.

### C. *The Present Removal.*

Upon remand of this case to state court on June 19, 2002, the parties conducted further discovery. Based upon information obtained in discovery, Plaintiffs added BP Amoco Chemical Company ("BP Amoco"), a Delaware corporation, as a defendant in the case. (*See* Order of Sept. 27, 2002 (Blanchard, J.), Ex. A to the Notice of Removal.) BP Amoco subsequently removed the case to this Court, with consent of all Defendants, on October 11, 2002. Plaintiffs seek remand of the case.

## II. *LEGAL ANALYSIS*

█ Plaintiffs' motion to remand is based upon two grounds. First, Plaintiffs contend that the removal petition is untimely under the "first-served" defendant rule. According to this rule, if the later-served defendant is served more than thirty days after the first-served defendant, and the first-served defendant fails to file a timely removal petition, then the later-served defendant is precluded from removing the case even with the first-served defendant's consent. *See, e.g., Schmidt v. Nat'l Org. for Women,* 562 F.Supp. 210 (N.D.Fla.1983). Second, Plaintiffs argue that MWCG was not fraudulently joined, and thus, removal is precluded under 28 U.S.C. § 1441(b).

█ The first issue that must be addressed is whether this Court should adopt the "first-served" defendant rule in deciding whether the removal petition was time-

indicative of the parties' carelessness in referring to the corporate entities in this case.

ly filed. The time period in which a defendant must file a petition for removal is set out in subsection (b) of 28 U.S.C. § 1446 as follows:

> The notice ... shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based....
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable....

Additionally, the unanimity rule requires that all named defendants consent to the removal. *Russell Corp. v. Am. Home Assurance Co.*, 264 F.3d 1040 (11th Cir.2001); *Holder v. City of Atlanta*, 925 F.Supp. 783 (N.D.Ga.1996).

In this case, it is undisputed that no defendant named in the original complaint filed a notice of removal within thirty days of the first service of the complaint. Defendant BP Amoco, however, filed the removal petition at issue within thirty days of the date it was added as a defendant.[7] Further, BP Amoco had the consent of the other defendants in removing the case. Accordingly, BP Amoco claims that its removal petition is timely. Plaintiffs contend that the failure of the other defendants to remove the case within thirty days of service of the first-served defendant bars BP Amoco's right to remove the case under the "first-served" defendant rule.

Whether the thirty-day time period on removal begins to run with the first service or with the service of the removing defendant has not been addressed by the Eleventh Circuit. Two other circuits and district courts within this circuit have followed the first-served defendant rule, referring to it as the "majority rule," whereby they held that a later-served defendant is barred from removing a case to federal court when the first-served defendant did not remove within thirty days of its service. *McKinney v. Bd. of Trs. of Mayland Cmty. Coll.*, 955 F.2d 924, 926 n. 3 (4th Cir.1992);[8] *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1263 (5th Cir.1988), *relying upon Brown v. Demco, Inc.*, 792 F.2d 478, 481 (5th Cir.1986); *Holder*, 925 F.Supp. at 785; *Kuhn v. Brunswick Corp.*, 871 F.Supp. 1444 (N.D.Ga.1994); *Schmidt*, 562 F.Supp. at 212.

The courts that follow the first-served defendant rule reason that the rule follows logically from the unanimity rule. These courts conclude that a defendant who permits the thirty-day removal window to pass cannot later consent to removal by a subsequently served defendant, thus preventing a subsequently served defendant

---

**7.** Plaintiffs did not formally file and serve the amended complaint in state court because the state court's order of September 27, 2002, explicitly added BP Amoco as a defendant. I find that the date of service of the amended complaint on BP Amoco is September 27, 2002.

**8.** The parties disagree as to whether the Fourth Circuit follows the "first-served" defendant rule. In footnote 3 of its *McKinney* opinion, however, the court clearly states a case is not removable by a defendant served

more than thirty days after the first defendant is served. 955 F.2d at 926 n. 3. The *McKinney* court then held that Section 1446(b) gives individual defendants "thirty days from the time they are served with process or with a complaint *to join in an otherwise valid removal petition.*" *Id.* at 928 (emphasis added). This position is in keeping with the first-served defendant rule because it contemplates that a valid notice of removal has been filed within thirty days of service of the first-served defendant.

from removing. *See, e.g., Brown,* 792 F.2d at 481. The courts also stress that the first-served defendant rule is consistent with the axiom that removal statutes are to be strictly construed against removal. *Id.* at 482.

If this Court were to follow the first-served defendant rule, the removal petition filed by BP Amoco would be untimely. The Sixth and Eighth Circuits have recently followed a different rule to determine when the thirty-day time period begins to run. These circuits have held that later-served defendants have thirty days from their date of service to file a notice of removal with unanimous consent of the other defendants, even if the first-served defendant did not file a notice of removal within thirty days of its service. *Marano Enters. of Kansas v. Z–Teca Rests., L.P.,* 254 F.3d 753 (8th Cir.2001); *Brierly v. Alusuisse Flexible Packaging, Inc.,* 184 F.3d 527 (6th Cir.1999). In so doing, these courts stress the inequity of foreclosing the later-served defendant's right to removal simply because it was not served concurrently. *See id.; see also* 14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters 3d § 3732, at 339–40 (criticizing the first-served rule because "subsequently served defendants are deprived of the opportunity to persuade the first defendant to join in the notice of removal"). They also point out that to follow the first-served defendant rule would require the placement of the word "first" in front of "defendant" in the statute, and Congress would have done so itself had it so intended. *See Brierly,* 184 F.3d at 533.

At least two district courts within the Eleventh Circuit have rejected the first-served defendant rule. In *Collings v. E–Z Serve Convenience Stores, Inc.,* 936 F.Supp. 892 (N.D.Fla.1996), a defendant was added to the lawsuit filed in state court seventeen months after the complaint had been filed. The district court held: "Allowing the initially served defendant the choice of whether to remove, but binding that decision on later-joined defendants leads to inequitable results." *Id.* at 895. The court pointed out that ultimately a plaintiff has control over whether the action may be removed when he chooses to join a new defendant to a lawsuit. The *Collings* court allowed the later-joined defendant to remove the case with the other defendant's consent. *Id.; see also Morlan v. HTL Truck Lines, Inc.,* Civ. No. 102–756–TWT (N.D. Ga. June 27, 2002) (unpublished) (Thrash, J.) (rejecting the first-served defendant rule and certifying the issue for interlocutory review).

After carefully considering the cases addressing this issue and the supporting rationale, I decline to adopt the first-served defendant rule advanced by Plaintiffs in this case. Significantly, while the majority of multiple defendant cases adhere to the first-served defendant rule, these cases tend to involve co-defendants who are named simultaneously in the original complaint. In the case at bar, Defendant BP Amoco was not named in the original complaint but added after nearly one year of litigation. The application of the first-served defendant rule to BP Amoco would inequitably deprive it of its removal rights. No policy reason behind the rule justifies this inequity. *See Eltman v. Pioneer Communications of Am., Inc.,* 151 F.R.D. 311, 317 (N.D.Ill.1993) ("More importantly, even if barring removal by a later-served defendant is justified in certain circumstances, it is unjustified and inequitable when the later-served defendant is not named until the initial thirty-day period has lapsed.... Allowing a later-named defendant to remove ... does not start the case over because there is no case against the later-named defendant until he is named."). Accordingly, I find that Defen-

dant BP Amoco's notice of removal was timely in that it was filed within thirty days of the date it was added as a defendant.

■ Having determined that the notice of removal is timely does not settle the matter because Defendant BP Amoco must have unanimous consent of the four other corporate defendants to remove. Although MWCG's counsel signed the removal petition reflecting its consent (Ex. C to Notice of Removal), I conclude that MWCG has waived its right to consent to removal under the particular circumstances of this case.

The removal of this case on both occasions has been based upon diversity of citizenship. On the face of the complaint, it appears that such removal is improper because Defendant MWCG is considered a resident of Georgia. However, the removing defendant in both petitions has claimed that MWCG was fraudulently joined. The most important aspect of the removals is that neither removal was initiated by the fraudulently joined party, Defendant MWCG. Yet, Defendant MWCG had within its corporate knowledge all of the jurisdictional facts related to its corporate reorganization, at least as of November 7, 2001, the date it filed its answer to the complaint. On that date, Defendant MWCG knew that it was not in existence at the time the pressure vessel was manufactured. Indeed, its answer expressly states that it is an improper party. Yet, Defendant MWCG did not undertake to remove the case. Moreover, Defendant MWCG was not the party that removed the case in March 2002, within thirty days of the depositions that allegedly put the other defendants on notice of the jurisdictional facts. In sum, this case was removable under the theory of fraudulent joinder from the first day it was filed in state court, and Defendant MWCG had corporate knowledge of that fact on November

7, 2001, at the very latest. Yet, it chose not to remove the case. It would serve no legitimate purpose to allow Defendant MWCG to consent to removal now. For this reason, the removal petition of Defendant BP Amoco does not have the required unanimity, and the case must be remanded.

As in the case of the prior removal proceeding, it is not necessary to address Defendants' contention that Defendant MWCG has been fraudulently joined. Although I am not called upon to decide the issue, I am constrained to comment on the corporate liability of Defendants MWC Inc. and MWCG.

As detailed above, neither Defendants MWC Inc. or MWCG were in existence at the time the pressure vessel was manufactured. Instead, the pressure vessel was manufactured by Modern Welding Company, a Kentucky corporation. As averred by general counsel, Mr. Douglas A. Wetzel, and confirmed through Kentucky's Secretary of State's Office, Modern Welding Company became Modern Welding Company of Owensboro, Inc., a Kentucky corporation that still exists today. (Wetzel Aff. ¶ 6; *information also available online at* **http://www.sos.state/ky.us.**)

In Georgia, successor liability does not exist unless: "(1) there is an agreement to assume liabilities; (2) the transaction is, in fact, a merger; (3) the transaction is a fraudulent attempt to avoid liabilities; or (4) the purchaser is a mere continuation of the predecessor corporation." *Bullington v. Union Tool Corp.,* 254 Ga. 283, 328 S.E.2d 726 (1985). However, these exceptions are premised upon the existence of only one corporation at the completion of the transaction, as pointed out by the Restatement (Third) of Torts:

Almost all of the reported decisions applying the bases of successor liability stated in this Section involve predeces-

sors that transfer all of their assets to successors and then dissolve or otherwise cease operations. Indeed, the predecessor's termination is the circumstance that, as a practical matter, most often gives rise to the need for a post-transfer tort plaintiff to look to the successor for recovery. *The exceptions set forth in Subsections (c) and (d), merger and continuation, most frequently have significance when the predecessor has transferred all of its assets to the successor and, at least formally, has ceased to exist.* But there is no reason that the exception set forth in Subsections (c) and (d) might not arise in connection with the transfer of a division of a large company, leaving the company in existence after the transfer.

Restatement (Third) of Torts—Products Liability § 12, cmt. h (1997) (emphasis added). In the present case, successor liability seems to have no application where there was no devolution of assets and liabilities to Defendants MWC Inc. and MWCG. Certainly, the predecessor corporation did not cease to exist. Instead, it appears that the true successor corporation is Modern Welding Company of Owensboro, Inc. Ultimately, however, this is an issue better decided by the state court on remand.

### III. *CONCLUSION*

For the foregoing reasons, Plaintiffs' Motion to Remand [Doc. No. 15] is **GRANTED.** All other pending motions in the case are **DENIED AS MOOT.** The Clerk is instructed to **REMAND** this case to the Superior Court for Richmond County. Costs and attorney's fees are taxed against Defendants.

**ORDER ENTERED** at Augusta, Georgia, this 13th day of February, 2003.