41721. BULLINGTON v. UNION TOOL CORPORATION.
(328 SE2d 726)

CLARKE, Justice.

This is a products liability action alleging defective design and manufacture of a table saw brought on grounds of negligence and strict liability. The trial court granted summary judgment to the defendant, Union Tool Corporation, holding that the defendant was not liable as a successor corporation for the torts of the company which designed and manufactured the table saw and that the claims were barred by the statute of repose in OCGA § 51-1-11 (b) (2). The appellant raises issues involving liabilities of successor corporations and the constitutionality and applicability of OCGA § 51-1-11 (b) (2). Pretermitting the statutory issues, we find under the facts as stipulated in this case that Union Tool is not liable as a successor corporation and therefore the judgment in its favor is affirmed.

The parties stipulated to the following facts. Appellant Bullington was injured on the job while operating the table saw in question on April 3, 1981. The saw was designed, manufactured and sold to an unknown original purchaser by Indiana Foundry Machine & Supply Company at some time prior to 1956. In 1947 the company name became Indiana Foundry Machine & Supply Co., Inc. (hereinafter the old corporation). In 1956, Indiana Foundry Machine & Supply, Inc., was incorporated (hereinafter the new corporation). The new corporation purchased the realty and most of the assets of the old corporation. There was no identity of ownership between the corporations; none of the incorporators or stockholders of either corporation were

ever officers, directors or stockholders of the other.

The sale was for adequate consideration and not for an exchange of stock. The old corporation ceased doing business. The new corporation operated a manufacturing and sales business at the same location, with most of the same employees and employed the same individual as business manager. The new corporation manufactured and sold many of the same products and marketed them under the same trade name "Indiana Line" as the old corporation. However, the new corporation never sold or manufactured table saws of any kind, including the type which injured appellant Bullington.

In 1962 the new corporation merged with Union Tool Corporation and closed the Indiana operation. The merger agreement provided that the surviving corporation, Union Tool Corporation, was responsible for all liabilities of both corporations prior to the merger. The issue before the court is the effect of the 1956 sale on tort liability.

Generally, a purchasing corporation does not assume the liabilities of the seller unless: (1) there is an agreement to assume liabilities; (2) the transaction is, in fact, a merger; (3) the transaction is a fraudulent attempt to avoid liabilities; or (4) the purchaser is a mere continuation of the predecessor corporation. Fletcher, Cyclopedia of the Law of Private Corporations, § 7122; see 66 ALR3d 824, 827.

The appellants contend that the new corporation should be held liable under the theory that it is a continuation of the old corporation under the stipulated facts. In Georgia, the common law continuation theory has been applied where there was some identity of ownership. *Ney-Copeland & Assoc., Inc. v. Tag Poly Bags, Inc.*, 154 Ga. App. 256 (267 SE2d 862) (1980); *Johnson-Battle Lumber Co. v. Emanuel Lumber Co.*, 33 Ga. App. 517 (126 SE 861) (1924).

The appellant concedes that there is no identity of ownership in the present case, but contends that the continuation theory should be expanded in product liability cases because of the policies behind manufacturers liability. The court in *Cyr v. B. Offen &c., Inc.*, 501 F2d 1145 (1st Cir. 1974), expanded the continuation exception to successor liability where the successor was a group of employees of the predecessor who formed the new corporation, and continued to produce the same product in the same place and manner as the predecessor. In discussing the policy of spreading the risk of injury so that one who places a defective product into commerce should bear the cost of the injuries from that product the court states that a successor "carrying over the experience and expertise of the manufacturer, is likewise in a better position than the consumer to gauge the risks and the costs of meeting them. The successor knows the product, is as able to calculate the risk of defects as the predecessor, is in position to insure therefor and reflect such cost in sale negotiations, and is the only en-

tity capable of improving the quality of the product." *Cyr*, at 1154. See also *Turner v. Bituminous Cas. Co.*, 397 Mich. 406 (244 NW2d 873) (1976); *Andrews v. John E. Smith's Sons Co.*, 369 S2d 781 (Ala. 1979).

Other states have adopted the rule set forth in *Ray v. Alad Corp.*, 19 Cal.3d 22 (560 P2d 3, 136 Cal. Rptr. 574) (1974), of expanding successor liability in product liability cases where 1) the predecesor is liquidated after the transfer, 2) the successor holds itself out to be public as a continuation and produces the same product line, thus having the knowledge needed to weigh the risk of injury and 3) where the successor is benefiting from the good will of the prior manufacturer and should also assume the burden for defects in previously sold products. *Martin v. Abbott Laboratories*, 689 P2d 368 (Wash. 1984); *Ramirez v. Amsted Indus.*, 86 N.J. 332 (431 A2d 811) (1981); *Dawejko v. Jorgensen Steel Co.*, 290 Pa.Super. 15 (434 A2d 106) (1981).

Other courts, while recognizing these one policy differences in debtor-creditor cases from which the common law exceptions have evolved and products liability cases, have declined to expand or judicially modify the continuation exception. See *Rhynes v. Branick Mfg. Corp.*, 629 F2d 409 (5th Cir. 1980); *Bernard v. Kee Mfg. Co.*, 409 S2d 1047 (Fla. 1982); *Manh Hung Nguyen v. Johnson Machine &c. Corp.*, 433 NE2d 1104 (Ill. 1982).

Although urged by appellant and amicus curiae to expand the continuation exception in this case we decline to do so. We acknowledge the new corporation operated with many of the same employees, at the same location, and with a similar company name. Nevertheless, the facts in this case do not fit the holdings in previous Georgia cases because there was no common ownership and fall outside the holdings in *Cyr*, supra, and *Ray*, supra, because the product alleged to be defective was not produced or sold by the new corporation. The rationale underlying the holding in *Cyr* is that the successor was in a position to improve the quality of the product in question or to reflect the possible defects in the cost of the product. Since the new corporation never produced the product, this rationale does not apply. *Ray* actually requires that the new corporation produce the same product line.

Accordingly, summary judgment for the successor of the new corporation on this ground was proper.

*Judgment affirmed. All the Justices concur, except Smith and Gregory, JJ., who dissent. Marshall, P. J., disqualified.*

GREGORY, Justice, dissenting.

The majority opinion declines to expand the continuation exception to the general rule of non-liability of a purchasing corporation for the liabilities of a selling corporation for the reason that the purchas-

ing corporation, while it continued to manufacture and sell a line of products of its predecessor, did not continue the specific product responsible for the alleged injury. I concede there is logic in the majority's reasoning that the successor corporation is not in a position to improve the quality of a product it does not produce. This overlooks a more fundamental proposition to which I would have this court adhere. The concept of product liability recognizes the need for ". . . the protection of otherwise defenseless victims of manufacturing defects and the spreading throughout society of the cost of compensating them." *Price v. Shell Oil Co.*, 466 P2d 722 (1970). "[T]he enterprise, the going concern, ought to bear the liability for the damages done by its defective products." It is a ". . . socially necessary cost of doing business." *Shannon v. Samuel Langston Co.*, 379 FSupp. 797 (W.D. Mich.) (1974). Viewed in this light I suggest it is overly restrictive to require the ongoing enterprise to continue to produce the specific product. I would apply the continuation exception to the facts of this case.

DECIDED APRIL 30, 1985.

*Ellis, Easterlin & Peagler, Benjamin F. Easterlin IV,* for appellant.

*Watson, Spence, Lowe & Chambless, Thomas S. Chambless,* for appellee.

*Moore, Taylor & Assoc., Billy E. Moore, Winburn, Lewis & Barrow, Gene Mac Winburn,* amici curiae.