S97G1919. FARMEX INCORPORATED v. WAINWRIGHT et al.
(501 SE2d 802)

CARLEY, Justice.

Jeff Wainwright and James Corbin (Appellees) were sued for damages caused when a trailer became unhitched and struck a vehicle. As one of their defenses, Appellees alleged that the proximate cause of the collision was a defectively designed and manufactured hitch pin. Appellees also filed a third-party complaint against Farmex Incorporated (Farmex), an Ohio manufacturer of hitch pins, even though the hitch pin involved in the collision had been designed and manufactured by JA-BIL, Inc. (JA-BIL), another Ohio corporation. Third-party liability under the continuation theory was predicated upon Farmex's acquisition of the hitch pin inventory in a

---

[1] The trial court granted the district attorney's motion to nol pros the remaining charges.

purchase of assets from JA-BIL, and its subsequent introduction of that product into the stream of commerce.

The trial court granted summary judgment in favor of Farmex, concluding that, under the continuation theory, Farmex was not the "manufacturer" of the hitch pin for purposes of strict liability. In a whole-court opinion, the Court of Appeals reversed, although the elements of "the continuation theory, as traditionally applied," were not present. *Corbin v. Farmex*, 227 Ga. App. 620, 622 (1) (490 SE2d 395) (1997). The dissenters took the position that *Bullington v. Union Tool Corp.*, 254 Ga. 283 (328 SE2d 726) (1985) was controlling Georgia authority and that the majority's expansion of the continuation theory was contrary to that decision. We granted certiorari to review the opinion of the Court of Appeals.

In Georgia, strict liability applies only to the "manufacturer of any personal property sold as new property," and not to a "product seller." OCGA §§ 51-1-11 (b) (1); 51-1-11.1. However, a successor corporation can be held strictly liable as a "manufacturer," if it is a mere continuation of the predecessor corporation which actually manufactured the product. *Bullington v. Union Tool Corp.*, supra at 284. "In Georgia, the common law continuation theory has been applied where there was some identity of ownership. [Cits.]" *Bullington v. Union Tool Corp.*, supra at 284. Between JA-BIL, as the seller of corporate assets, and Farmex, as the purchaser of those assets, there is no identity of ownership. Thus, as the Court of Appeals held, the common law continuation theory, as previously applied in Georgia, has no applicability here.

It is undisputed that, after the transaction, Farmex continued JA-BIL's general business of manufacturing, warehousing and selling hitch parts. However, it also is undisputed that Farmex did not continue to design or manufacture any hitch pins of the type that it acquired from JA-BIL. Compare *Cyr v. B. Offen & Co.*, 501 F2d 1145, 1151 (II) (1st Cir. 1974) (applying New Hampshire law) (successor corporation "continued to produce the same kind of product in essentially the same way that [the predecessor corporation] had."); *Ray v. Alad Corp.*, 560 P2d 3, 10 (Cal. 1977) (successor corporation continued "to produce the same line of ladders. . . .").

> There is a difference between manufacturing the same type of product and remaining in the same sort of manufacturing business. . . . [I]t is neither logical nor fair to ask consumers of wholly unrelated [products] also to pay a premium for injuries caused by [a product that is no longer produced]. The product line exception requires the corporation to manufacture the same type of product, and not merely stay in the same type of manufacturing business.

*George v. Parke-Davis*, 733 P2d 507, 511 (Wash. 1987). See also *Burnside v. Abbott Laboratories*, 505 A2d 973, 986 (II) (Pa. Super. 1985). Thus, if the successor corporation continues to manufacture the same type of product, then it, by

> "carrying over the experience and expertise of the manufacturer, is likewise in a better position than the consumer to gauge the risks and the costs of meeting them. The successor knows the product, is as able to calculate the risk of defects as the predecessor, is in position to insure therefor and reflect such cost in sale negotiations, and is the only entity capable of improving the quality of the product." *Cyr*, [supra] at 1154. [Cits.]

*Bullington v. Union Tool Corp.*, supra at 284-285. If, however, the successor corporation merely continues the general business of the predecessor corporation, then it will not be "in a position to improve the quality of the product in question or to reflect the possible defects in the cost of the product." *Bullington v. Union Tool Corp.*, supra at 285.

As between Farmex and JA-BIL, any alleged defect in the hitch pin was attributable exclusively to JA-BIL's original design and manufacture. Farmex did not continue to manufacture hitch pins of that design. Therefore, Farmex was not a "manufacturer" against whom strict liability, regardless of negligence, can be imposed for defects in the design or manufacture of JA-BIL's hitch pins. Farmex's only connection to the hitch pins was that, after purchasing those items from JA-BIL, it introduced them into the stream of commerce. Under these circumstances, Farmex is simply a wholesaler of JA-BIL's hitch pins. Because Farmex was only "involved in placing a product in the stream of commerce" it became a "product seller" under OCGA § 51-1-11.1 (a), not a "manufacturer" subject to strict liability for any defect in the hitch pins under OCGA § 51-1-11 (b) (1).

The paramount purpose of strict liability " 'is the protection of otherwise defenseless victims of manufacturing defects and the spreading throughout society of the cost of compensating them.' [Cit.]" (Emphasis omitted.) *Ray v. Alad Corp.*, supra at 8. In Georgia, that purpose cannot be advanced by imposing strict liability upon a "product seller." Unless and until the General Assembly acts, strict liability is an available remedy only against a "manufacturer." Because Farmex did not continue the manufacture of the allegedly defective hitch pin, it "never produced the product, [and the continuation] rationale does not apply." *Bullington v. Union Tool Corp.*, supra at 285. A strict liability claim can be asserted only against JA-BIL, which continued in existence after the sale of its assets to Farmex.

The decision of the Court of Appeals reversing the grant of Farmex's motion for summary judgment is, therefore, reversed.

*Judgment reversed. All the Justices concur, except Hunstein, J., who concurs specially.*

HUNSTEIN, Justice, concurring specially.

*Bullington v. Union Tool Corp.*, 254 Ga. 283 (328 SE2d 726) (1985) involved a plaintiff who was injured in 1981 while operating a table saw which had been designed, manufactured and sold to an unknown purchaser at an unknown date no later than 1956. In the 25-year interval between the last date of sale and the plaintiff's injury, the company that manufactured the table saw had been incorporated, then sold to one corporation, then merged into another corporation, with the last change in ownership having occurred in 1962, some 19 years before the accident in issue. This Court upheld the trial court's ruling that the defendant corporation was not liable as a successor to the original manufacturer, finding applicable none of the four traditional grounds for assessing such liability:

> (1) there is an agreement to assume liabilities; (2) the transaction is, in fact, a merger; (3) the transaction is a fraudulent attempt to avoid liabilities; or (4) the purchaser is a mere continuation of the predecessor corporation. [Cit.]

Id. at 284. The Court discussed at length foreign case law which has taken different approaches in expanding the continuation theory, such as *Cyr v. B. Offen & Co.*, 501 F2d 1145 (1st Cir. 1974) (successor company may be liable where, due to experience and expertise, it is in better position than consumer to gauge and insure against risks and factor such cost into sale negotiations) and *Ray v. Alad Corp.*, 560 P2d 3 (19 Cal. 3d 22, 136 Cal. Rptr. 574) (1977) (where predecessor is dissolved, successor that continues product line and benefits from predecessor's goodwill can be held liable). See also Fletcher, Cyclopedia of the Law of Private Corporations, § 7123 et seq. (1991, Supp. 1994). The Court, however, declined to follow these cases over a dissent by Justice Gregory that the majority was being overly restrictive in requiring a successor corporation to continue to produce the specific product responsible for the alleged injury and that the Court's position

> overlooks a more fundamental proposition . . . . The concept of product liability recognizes the need for ". . . the protection of otherwise defenseless victims of manufacturing defects and the spreading throughout society of the cost of compensating them." [Cit.] "[T]he enterprise, the going concern, ought to bear the liability for the damages done by its

defective products." It is a ". . . socially necessary cost of doing business." [Cit.]

*Bullington,* supra at 286 (Gregory, J., dissenting).

In this case, there was no 25-year gap between the manufacture of the hitch pin and the injury resulting from its alleged defective condition or design. There is no complex history filled with ancient incorporations, sales, mergers and 19 years did not elapse between the merger and the injury: rather, the merger in this case closed in March 1991, with the accident occurring in May 1993. There is evidence that Farmex placed the hitch pin into the stream of commerce after acquiring it among JA-BIL's assets. Farmex purchased "substantially all the property and assets used or held for use in connection with" JA-BIL's business, including its goodwill, for which Farmex paid $35,000. Finally, Farmex purchased not only JA-BIL's business but also, for additional consideration, purchased JA-BIL's agreement of several years' duration not to compete with Farmex or to solicit any of JA-BIL's east coast customers "who order or have ordered hitch parts."

Unlike *Bullington,* most product liability cases do not involve products which were manufactured and sold more than 25 years before the plaintiff's injury. While the exceptional facts in *Bullington* weighed against any practical application of the expanded continuation theory, the more typical product liability scenario presented by this case would seem to have presented this Court an opportunity to reconsider that position. Unfortunately, however, the record in this appeal reveals there has been little development of the evidence in this case. The record consists solely of an affidavit by a Farmex officer/shareholder and a copy of the sales contract and non-competition agreement executed by Farmex. There is no evidence from which it could be determined the extent of JA-BIL's assets before the sale or the value of the assets and the extent of the liabilities retained by JA-BIL under the contract. There is no evidence from which the nature of the equipment manufactured by Farmex can be determined,[1] its expertise and experience in the area of hitch pins, the manner in which Farmex holds itself out to the public in regard to hitches, whether Farmex has continued to conduct JA-BIL's business, or whether Farmex is benefiting from the goodwill it purchased from JA-BIL. There is not even slight evidence of fraud in the acqui-

---

[1] Although the same paragraph prohibiting JA-BIL and certain individuals from soliciting customers who ordered hitch parts or screw machine work also contains language prohibiting them from diverting customers for the benefit of any entity engaged "in the same or substantially the same business in which [Farmex] is then engaged," there is no elaboration or discussion in the agreement as to the nature of Farmex's business.

sition of JA-BIL's assets by Farmex in the record.

Because of the sparse development of evidence in the record, I cannot conclude that the trial court, when viewing the evidence most favorable to the respondents on motion for summary judgment, erred by ruling in favor of Farmex. Accordingly, I concur with the affirmance of the judgment in this case.

DECIDED JUNE 29, 1998.

*Adams, Barfield, Dunaway & Hankinson, David B. Dunaway,* for appellant.

*Miller & Towson, Wallace Miller III, John D. Raines III, Reynolds & McArthur, W. Carl Reynolds, Katherine L. McArthur,* for appellees.