A07A1551. FIRST SUPPORT SERVICES, INC. v. TREVINO et al.
(655 SE2d 627)

BARNES, Chief Judge.

Francisco and Maria Trevino sued First Support Services, Inc. (FSS) for injuries Mr. Trevino sustained after he fell from a platform he was standing on to service an airplane. The case went to trial and the jury returned a verdict in favor of Mr. Trevino for $1,273,000 and of Mrs. Trevino for $250,000 for loss of consortium. FSS appeals, contending that the trial court erred in denying its motion for directed verdict, that the evidence was not sufficient to support the verdict, and that the jury instructions were improper. Because the trial court erred in denying FSS's motion for a directed verdict on the ground that it was the wrong party, we reverse.

In July 2004, Trevino, who is an aircraft mechanic employed by the Department of Defense, fell from a C-5 aircraft "wing stand," which is a large platform on which the mechanics stand to reach the aircraft they are servicing. The wing stand is positioned as closely as possible to the plane but not directly up against it to protect the delicate fuselage. The final few feet between the wing stand and the plane is spanned by pulling out a retractable platform with a rubber edge that rests against the plane. The platform is held out by pins that drop down through the platform and lock into position. Each time a plane comes or goes, the platform is retracted to leave a gap for the plane to maneuver in or out, and then the platform is pulled back out against the next plane.

On the day he was injured, Trevino set his unopened A-frame ladder on the platform, leaned it against the plane, then climbed up it to reach the area he was going to work on. Suddenly, a section of the

platform beneath the ladder retracted and Trevino fell more than thirty feet through the resulting two-foot square gap. He suffered serious injuries, including multiple fractures.

Trevino sued FSS doing business as SKE Support Services (SKE), which had a contract with the United States Air Force to service ground support equipment at Robins Air Force Base. In his initial complaint, Trevino alleged that he fell because the lock pins popped out and that FSS knew the stand had problems with misaligned or missing pins in the wing stand but negligently allowed them to remain in use. In his amended complaint, Trevino alleged that FSS had fabricated and installed defective locking pins, which proximately caused his injury, and was strictly liable for his injuries. He also alleged that FSS was liable in numerous specific ways, including negligent installation, inspection, and training, failure to warn or instruct about the pins, failure to provide safety devices, and breach of implied warranties of merchantability and fitness for a particular purpose.

After Trevino presented his evidence, FSS argued in its motion for a directed verdict that it was not the proper party, because it bought SKE a month after Trevino fell, it was not the same corporation, it did not assume SKE's liabilities, and it did not have the same owners. Additionally, FSS argued that SKE was not strictly liable for Trevino's injuries as a manufacturer, because it did not design the pins, but merely made copies of the pins designed by the Air Force. Finally, FSS argued that Trevino failed to establish that SKE's pins proximately caused him to fall. The trial court denied the motion and the trial proceeded to the jury verdict.

1. On appeal, FSS argues that the trial court erred in denying its motion for a directed verdict on several grounds. A motion for directed verdict can only be granted "[i]f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." OCGA § 9-11-50 (a); *Miranda v. Fulton DeKalb Hosp. Auth.*, 284 Ga. App. 203, 204-205 (1) (644 SE2d 164) (2007). In considering the motion, the court must view the evidence in the light most favorable to the party opposing the motion. "[T]his approach governs the actions of appellate courts as well as trial courts." (Citation and punctuation omitted.) *Church's Fried Chicken v. Lewis*, 150 Ga. App. 154, 159 (1) (C) (256 SE2d 916) (1979). A trial court's decision either to grant or deny a motion for directed verdict will not be disturbed on appeal if there is any evidence to support it. *Griffin v. Associated Payphone*, 244 Ga. App. 183 (1) (534 SE2d 540) (2000).

2. Because the issue is dispositive, we first address FSS's contention that Trevino sued the wrong entity. The company asserts that the trial court erred in denying its motion for a directed verdict

because Trevino failed to establish that it was a "successor corporation" to SKE, the entity that actually made the pins at issue, and therefore FSS is not liable for SKE's actions. In a related enumeration, FSS contends that the trial court erred in giving, over objection, Trevino's charge that "where the name of the corporation SKE Support Services, Inc. has legally changed to First Support Services, Inc., the corporation is suable in the new corporate name, though the cause of action may have arisen before the name change."

> In Georgia, strict liability applies only to the "manufacturer of any personal property sold as new property," and not to a "product seller." OCGA §§ 51-1-11 (b) (1); 51-1-11.1. However, a successor corporation can be held strictly liable as a "manufacturer," if it is a mere continuation of the predecessor corporation which actually manufactured the product. In Georgia, the common law continuation theory has been applied where there was some identity of ownership.

(Citations and punctuation omitted.) *Farmex, Inc. v. Wainwright*, 269 Ga. 548, 549 (501 SE2d 802) (1998).

"Generally, a purchasing corporation does not assume the liabilities of the seller unless: (1) there is an agreement to assume liabilities; (2) the transaction is, in fact, a merger; (3) the transaction is a fraudulent attempt to avoid liabilities; or (4) the purchaser is a mere continuation of the predecessor corporation." (Citation omitted.) *Bullington v. Union Tool Corp.*, 254 Ga. 283, 284 (328 SE2d 726) (1985).

The first issue, then, is whether Trevino presented enough evidence to the jury to create a genuine issue of material fact as to whether FSS was a continuation of SKE instead of a completely different entity. Trevino responds first that FSS is bound by an admission in judicio in its first answer that it was doing business as SKE. FSS, however, subsequently denied it was a proper party in its answers to Trevino's first interrogatories and again in the first sentence of its amended answer in response to Trevino's amended complaint.

As a general rule, under OCGA § 24-3-30 either party may avail himself of allegations or admissions made in the pleadings of the other. If the trial court admits conflicting evidence, however, and the jury considers it in reaching its verdict, "the trial court has in effect, either sua sponte or by overruling an opposing motion, tacitly permitted the pleading party to withdraw the admission contained in the pleadings." *Walker v. Jack Eckerd Corp.*, 209 Ga. App. 517, 520 (1) (434 SE2d 63) (1993). Moreover, FSS explicitly preserved its argument that it was not a proper party in the consolidated pretrial order,

which the trial court signed. The signed pretrial order "expressly superseded the pleadings as provided by Uniform Superior Court Rule 7.2 . . . [and] established the issues in litigation." *Ford v. Uniroyal Goodrich Tire Co.*, 231 Ga. App. 11, 15 (497 SE2d 596) (1998), rev'd on other grounds, 270 Ga. 730 (514 SE2d 201) (1999); see *Ballenger Paving Co. v. Gaines*, 231 Ga. App. 565, 570 (1) (b) (499 SE2d 722) (1998). Thus, FSS was not estopped from asserting at trial that it was not the proper party to be sued. Accordingly, Trevino had to establish that FSS was not a new company but a successor corporation, which is "a mere continuation of the predecessor corporation which actually manufactured the product." (Citation omitted.) *Farmex*, supra, 269 Ga. at 549.

Trevino presented no evidence to the jury establishing any of the four exceptions to the rule that a purchasing corporation does not assume the liabilities of the seller, which would have been: that FSS agreed to assume SKE's liabilities; that the transaction was a merger; that the transaction was a fraudulent attempt to avoid liabilities; or that FSS was a mere continuation of SKE. While Trevino introduced evidence that FSS retained some of SKE's employees and was headquartered on the same street, the witness who testified to that fact also testified that a former officer of the company had been terminated in the "buyout," when FSS bought SKE in 2004.

After Trevino had called all of his witnesses and the jury was excused, the trial court admitted into evidence over FSS's objection a certified copy of an amendment to SKE's articles of incorporation changing its name to FSS. A name change alone, however, does not establish that FSS is a continuation of SKE. To establish that the new company is but a continuation of the old company and liable for its debts and obligations, the new corporation must have the same "objects, assets, and stockholders." *Ney-Copeland & Assoc. v. Tag Poly Bags*, 154 Ga. App. 256 (267 SE2d 862) (1980). In this case, Trevino presented no evidence whatsoever regarding the ownership of the two companies, whether the transaction was a merger or an attempt to commit fraud, or whether FSS agreed to assume SKE's liabilities.

While Trevino questioned a defense witness about a contract between SKE, FSS, and the Air Force involving a name change in October 2004, this evidence was introduced after Trevino rested and after FSS unsuccessfully moved for a directed verdict. Further, the witness, who was the liaison between the aircraft personnel and the contractors, could not identify the specifics of the contract, which was not introduced into the record, and its contents are not clear from the transcribed questions and answers. Additionally, while Trevino argued to the trial court and in his brief that FSS "admitted in a federal

judicial proceeding that FSS was formerly known as SKE," he submitted no evidence to substantiate that claim.

> We acknowledge the new corporation operated with many of the same employees, at the same location, and with a similar company name. Nevertheless, the facts in this case do not fit the holdings in previous Georgia cases because there was no [evidence of] common ownership and . . . the product alleged to be defective was not produced or sold by the new corporation. The rationale [for holding the successor corporation liable] is that the successor was in a position to improve the quality of the product in question or to reflect the possible defects in the cost of the product. Since the new corporation never produced the product, this rationale does not apply.

(Citations omitted.) *Bullington v. Union Tool Corp.*, supra, 254 Ga. at 285.

In this case, the only evidence Trevino submitted to establish that FSS was a successor corporation to SKE was an amendment to SKE's articles of incorporation, about which no one testified. Accordingly, the evidence introduced, with all reasonable deductions, demanded a verdict for FSS. See *Blum v. RES Assoc.*, 211 Ga. App. 543, 544-545 (439 SE2d 712) (1993). The trial court erred in denying FSS's motion for a directed verdict on this ground.

3. Based on the foregoing, FSS's other enumerations of error are moot.

*Judgment reversed. Smith, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 16, 2007 —
RECONSIDERATION DENIED DECEMBER 13, 2007 —

*Hawkins & Parnell, Warner S. Fox, Teresa E. Lazzaroni*, for appellant.

*Moore & Hawthorne, Marc D. Hawthorne, Wilbur J. Moore*, for appellees.