A08A1660. ETOWAH ENVIRONMENTAL GROUP et al.
v. ADVANCED DISPOSAL SERVICES, INC. et al.
(676 SE2d 456)

BARNES, Judge.

Etowah Environmental Group, Glennon C. Grogan, James H. Grogan, David G. Grogan, Ginger Grogan Power, Christopher N. Grogan, (the last three individually and as trustee of the irrevocable trust of James H. Grogan for the benefit of themselves) (hereinafter "Etowah") appeal from the trial court's order compelling arbitration pursuant to a contract between Etowah and Advanced Disposal Services, Incorporated, Federal Road, LLC, Gerald Allen, Michael Cosman, Charles Gray, and Walter Hall (hereinafter "ADS"). The trial court determined that all of Etowah's claims were subject to arbitration, and Etowah contends that the trial court erroneously considered the intent of the parties instead of the language of the contract, and also ignored the actual terms of the operating agreement. Following our review, we affirm.

---

"[T]he standard of review from the grant of a motion to compel arbitration is whether the trial court was correct as a matter of law. In addition, the construction of a contract is a question of law for the court that is subject to de novo review." (Citations omitted.) *Moore & Moore Plumbing v. Tri-South Contractors*, 256 Ga. App. 58, 60-61 (1) (567 SE2d 697) (2002).

The record shows that in August 2001, ADS and Etowah formed the company Federal Road to operate solid waste disposal facilities, including the Eagle Point Landfill in Forsyth County. Under the Operating Agreement, ADS owned a 75 percent interest in Federal Road, and Etowah owned the remaining 25 percent interest. The Agreement specified that Federal Road might eventually merge into ADS upon ADS's election or by majority vote. In the event of a merger, Etowah's and ADS's shares in Federal Road would be exchanged for units in ADS of an equivalent value. The Agreement also contained the following clause related to the appraisal process:

10.9 Unit Exchange

. . .

(b) (ii) If the Unit Value is not determined pursuant to paragraph (i) above then the Unit Value of Units in the LLC [Federal Road] and the Unit Value of Units in the Holding Company [ADS] shall be determined by the appraiser selected in accordance with this paragraph 10.9 (b). The Members of the LLC [Federal Road] and the Holding Company [ADS] shall each select an appraiser and these two appraisers shall select a third appraiser (the "Appraiser"). . . . The third appraiser would then calculate the value of each company's shares in Federal Road and the value of each share of ADS.

. . .

In June 2006, ADS informed Etowah that it was merging Federal Road into ADS, and, on June 30, 2006, adopted a Plan of Merger which incorporated certain provisions of the Agreement, including the manner in which the shares would be valued. The Merger Plan was signed by the presidents of ADS and Federal Road. It provided that, regarding the valuation of the Federal Road units,

ADS and *Etowah* shall each select an appraiser within thirty (30) days of the date hereof and these two appraisers shall select a third appraiser ("the Appraiser") within ten (10) days. If Etowah fails or refuses to select an appraiser within the thirty (30) day period described above, the ADS

shall select both appraisers who shall then select the Appraiser within the ten (10) day period described above.

The merger was completed in September 2006, and documents to that effect were filed with the Delaware Secretary of State. The valuation process commenced shortly thereafter, and Federal Road and ADS each selected an appraiser, who together selected a third appraiser. The appraisal was completed in May 2007, despite Etowah's objections to the appraisal process. It asserted that, as a minority shareholder in ADS, it was entitled to more information, and that, pursuant to the Merger Agreement, it should be allowed to select one of the appraisers. In response to that objection, ADS submitted that the Merger Plan "was erroneous" in stating that Etowah could choose an appraiser. It said, "This statement is contrary to the Operating Agreement," and "to the extent that the Merger [Plan] is inconsistent with the Operating Agreement, ADS has followed the Operating Agreement."

Following the valuation, Etowah filed a complaint alleging that ADS improperly valued its interest in Federal Road and ADS under the Operating Agreement, claiming conversion, fraud, breach of contract, civil conspiracy, breach of fiduciary duty, violation of Georgia securities laws, and intentional infliction of emotional distress. ADS filed a motion to compel arbitration and to dismiss Etowah's complaint, and Etowah filed a motion for stay of arbitration. Etowah amended its complaint alleging virtually the same claims, adding that ADS breached the Merger Plan, rather than the Operating Agreement and asserting its other claims as a violation of the Merger Plan.

The trial court granted ADS's motion to compel arbitration and denied Etowah's motion for a stay. The trial court found, in relevant part, that "all of [Etowah's] claims touch on the valid arbitration agreement between the parties and could not have been brought in the absence of the Operating Agreement." Thus, the court concluded, Etowah's claims must be arbitrated.

The Operating Agreement contained the following provision regarding arbitration:

*All disputes arising hereunder shall be settled by arbitration.* The arbitrators shall be selected and the arbitration shall be conducted pursuant to the rules of the American Arbitration Association. The determination rendered by the arbitrators shall be conclusive and binding upon the parties hereto; provided, however, that any such determination shall be accompanied by a written opinion of the arbitrators giving the reasons for the determination. This provision for

arbitration shall be specifically enforceable by the parties and the decision of the arbitrators in accordance herewith shall be final and binding and there shall be no right of appeal therefrom.

And the Merger Plan provided:

10.10 Consent to Merger. [E]ach member hereby irrevocably consents to the merger or consolidation by any legal means of the LLC with the Holding Company (or its successors) upon (i) the election of the Holding Company (or its successors); and (ii) the adoption of a plan of merger or other consolidation by Majority Vote. . . .

1. Etowah first claims that the trial court erred when it considered the intent of the parties instead of the restrictive language of the Operating Agreement and compelled arbitration of Etowah's claims related to the merger. The essential issue on appeal is whether the language in the arbitration clause of the Operating Agreement — that "[a]ll disputes arising *hereunder* shall be settled by arbitration," encompasses all disputes involving the merger of Federal Road, including Etowah's so-called "statutory and common law claims."

The Operating Agreement provides that Delaware law controls. Delaware courts have held that when determining arbitrability, courts are limited to ascertaining whether the dispute is one that falls within the scope of the arbitration clause of the contract. *SBC Interactive v. Corporate Media Partners,* 714 A2d 758, 761 (Del. 1998). In *SBC Interactive,* the Delaware Supreme Court noted that courts may not consider any merits of the claim sought to be arbitrated and also explained that any doubts as to arbitrability are to be resolved in favor of arbitration. Id.; *Parfi Holding AB v. Mirror Image Internet,* 817 A2d 149, 155-156 (Del. 2002); see also *Krut v. Whitecap Housing Group*, 268 Ga. App. 436, 442 (2) (c) (602 SE2d 201) (2004). The court is faced with two issues when arbitrability is contested: (1) it must determine whether an arbitration clause is broad or narrow in scope, and (2) the court must apply the arbitration provision to the claim to determine whether the claim falls within its ambit. *Parfi,* supra at 155.

Moreover, "[w]hen deciding whether the parties agreed to arbitrate a certain matter . . . courts generally should apply ordinary state-law principles that govern the formation of contracts." *McLaughlin v. McCann,* 942 A2d 616, 627 (Del. Ch. 2008).

In interpreting contract language, clear and unambiguous terms are interpreted according to their ordinary and usual

meaning. Absent some ambiguity, Delaware courts will not distort or twist contract language under the guise of construing it.

(Citations omitted.) *Allied Capital Corp. v. GC-Sun Holdings, L.P.,* 910 A2d 1020, 1030 (Del. Ch. 2006).

Here, the issue that ADS seeks to arbitrate is essentially the valuation of shares involved in the merger with Federal Road. In its amended complaint, Etowah removed all references to the Operating Agreement and alleged conversion because ADS "appropriated Etowah's ownership interest in Federal Road" and "exercised dominion over the property inconsistent with Etowah's rights under the law"; fraud because ADS "misrepresented their intent in the Plan of Merger"; breach of the Merger Agreement; civil conspiracy to further a scheme to breach the fiduciary duties it was owed, violations of securities purchase or sale law, and intentional infliction of emotional distress by creating financial distress.

In *Gregory v. Electro-Mechanical Corp.*, 83 F3d 382 (11th Cir. 1996), the Court was asked to determine whether the counts alleged in a complaint, including a count for fraudulent inducement, fell within a contract provision requiring arbitration of "any dispute . . . which may arise *hereunder.*" Id. at 383. After considering the structure of the complaint and its factual allegations, the Eleventh Circuit concluded that, regardless of the plaintiffs' characterization of the claims, they all arose under the agreement and thus were encompassed by the arbitration provision. Id. at 384-385.

Likewise, the trial court here correctly determined that the arbitration provision in the Operating Agreement applies to claims arising from the Merger Plan. Delaware Courts consider several factors in making this kind of determination, including (1) whether the arbitration clause is broad in nature, (2) whether the counts in the complaints are at least "related to" the Operating Agreement even if they did not directly "arise from" it, (3) whether the Operating Agreement expressly incorporated the Merger Agreement, and (4) whether not arbitrating some of the claims would lead to a great deal of judicial inefficiency. *Detroit Med. Center v. Provider Healthnet Svcs.*, 269 FSupp.2d 487 (2003).

In this case, both the Operating Agreement and the Merger Agreement have clauses related to how the shares will be valued. The Operating Agreement in section 10.10 specifically states that Etowah irrevocably consents to a merger (1) upon the election of ADS and (2) the adoption of a "plan of merger" by majority vote which provides an equity interest of equal value in ADS in exchange for the Federal Road shares. The Merger Plan also specifies that Federal Road and ADS are merging pursuant to section 10.10 of the Operating Agreement.

Regarding Etowah's argument that the claims arise from common and statutory law, if the tort claims "touch on the obligations" created in the parties' contract, those claims are subject to arbitration. *Parfi*, supra, 817 A2d at 156. "Where a broad arbitration clause is in effect, even the question of whether the controversy relates to the agreement containing the clause is subject to arbitration." (Punctuation omitted.) *Wise v. Tidal Constr. Co.*, 261 Ga. App. 670, 673 (1) (583 SE2d 466) (2003). Here, the tort claims clearly "touch on" the parties' contractual obligations in the Operating Agreement, in which the relationship between ADS, Etowah, and Federal Road was defined. The Operating Agreement clearly stated that Etowah irrevocably consented to the merger under its terms and, as noted, the Merger Plan specifically stated that ADS and Federal Road were merging pursuant to section 10.10 of the Operating Agreement. As to the breach of fiduciary duty claim, the source of ADS's fiduciary duties was the Operating Agreement. Etowah was not a party to the Merger Plan; accordingly, any fiduciary duties owed to it by necessity arose from the Operating Agreement. "A party may not avoid a contractual arbitration clause merely by casting its complaint in tort." Id.

Thus, the trial court did not err in finding the language applying the arbitration requirement to "all disputes arising hereunder" broad enough to cover this dispute.

2. We find no merit to Etowah's contention that the arbitration clause in the Agreement is not enforceable because the first sentence, "All disputes arising hereunder shall be settled by arbitration," is underlined, thus making it an unenforceable heading rather than an enforceable contract provision. It argues that section 16.8 of the Agreement stipulates that headings are for reference purposes only and have no effect on the meaning of the Agreement's provisions.

Contrary to Etowah's argument otherwise, the heading of 16.12 is clearly "Arbitration." The fact that the first sentence of the clause is underlined in a fashion similar to the headings does not modify its purpose. Similarly, in section 5.5 headed "Capital Accounts Generally," a portion of subsection (b) is underlined as follows: "No member shall be entitled to withdraw any part of its Capital Account, *or to receive any distribution from the LLC except as specifically provided in this Agreement.*" This clause is clearly a provision of the contract and the fact that it is underlined does not change its status. Similarly, the arbitration clause is clearly a contract provision.

It is a well-established rule of contract interpretation that "the construction which will uphold a contract in whole and in every part is to be preferred." *Homelife Communities Group v. Rosebud Park, LLC*, 280 Ga. App. 120, 122 (633 SE2d 423) (2006). It is likewise

"well established that a court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless." Id.

Accordingly, the trial court did not err in ordering Etowah to submit to arbitration.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED MARCH 27, 2009.

*McGuire Woods, David J. Forestner, H. Wayne Phears*, for appellants.

*Balch & Bingham, Michael J. Bowers, T. Joshua R. Archer, Malissa Kaufold-Wiggins, Hitch & Webb, Scott E. Hitch*, for appellees.

