**THIRD DIVISION
ANDREWS, P. J.,
DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**November 6, 2013**

# In the Court of Appeals of Georgia

A13A1076. HERREN et al. v. SUCHER et al.

A13A1117. HERREN et al. v. BARRIN INNOVATIONS, LLC.

McMillian, Judge.

After suffering a stroke following an exercise session with a personal trainer at a gym, plaintiff/appellant Joey Herren filed a complaint, as several times amended and recast, seeking damages under theories of ordinary and gross negligence against various individuals and corporate entities, including the appellees in this case, gym owner Gregory Paul Sucher ("Sucher"), Nonstop Fitness Incorporated ("Nonstop") and Club Management Services, Inc. d/b/a Nonstop Fitness Incorporated ("Club Management") (collectively referred to as the "gym defendants").[1] Further,

---

[1] Herren's wife, Sharon Herren, also filed a loss of consortium claim. Both are parties to this appeal and will be collectively referred to as "plaintiffs;" Joey Herren will be referred to as "Herren."

contending in their amended and recast complaints that the stroke Herren suffered was at least partly attributable to a non-FDA approved dietary supplement known as R.A.G.E. RV-5, plaintiffs also sought damages against the retail and wholesale distributors of the supplement, including appellee Barrin Innovations, LLC ("Barrin").

The underlying facts are undisputed. Herren began to work with the personal trainer a few weeks after he joined the gym, and although Herren obtained R.A.G.E. from a former co-worker, he did not begin taking it until he started working with the trainer. Herren had taken R.A.G.E. and trained with the personal trainer on the day he suffered the stroke. In the complaint, plaintiffs allege that Herren suffered a stroke as a result of taking R.A.G.E. and over-exercising.

The gym defendants filed a motion for summary judgment, contending that Herren had signed three separate agreements containing exculpatory clauses waiving and releasing them from liability prior to beginning an exercise program with the personal trainer, and that, in any event, Herren also assumed the risk of his injuries. Plaintiffs responded, asserting among other things that the releases Herren signed did not bar his claims against the gym defendants for gross negligence, that a jury should decide whether Nonstop or Club Management was the proper entity to enter into the

2

agreements, and that the agreements were unenforceable because the agreements Herren signed had not been submitted for state approval as required by OCGA § 10-1-393.2 of the Fair Business Practices Act.[2] The trial court agreed with plaintiffs that the exculpatory clauses did not bar their claims against the gym defendants based on allegations of gross negligence, but found the exculpatory clauses were binding and enforceable on their claims of ordinary negligence.[3] Herren filed a notice of appeal from this order as permitted by OCGA § 9-11-56 (h), and the appeal was docketed in this Court as Case Number A13A1076.

Barrin Innovations also moved for summary judgment, or alternatively, to dismiss. Among other things,[4] Barrin contended that it was not a proper party to the proceedings because, pursuant to a purchase agreement, its assets and liabilities had been transferred to William Mellor and/or SWE, LLC, ("Mellor") prior to the time

---

[2] Plaintiffs specifically argued that although a contract had been submitted for approval, it was not the same as any of the agreements at issue here.

[3] Although not at issue here, the trial court also found that a jury must decide whether the personal trainer was an independent contractor or an employee of the gym.

[4] The trial court noted that Barrin's other contention–that the complaint failed to state a claim against it, had been remedied in plaintiffs' third amended and recast complaint.

3

Herren was injured and plaintiffs filed their complaint. The trial court agreed that Mellor had assumed Barrin's liabilities and thus was the proper party here, and accordingly granted summary judgment to Barrin.[5] Plaintiffs' appeal from that order was docketed in this Court as Case Number A13A1117. We consolidated these appeals for review, and now affirm in Case Number A13A1076 but reverse in Case Number A13A1117.

## CASE NO. A13A1076

1. (a) Herren challenges the trial court's grant of summary judgment to the gym defendants on his ordinary negligence claim, contending the exculpatory clauses were unenforceable for various reasons. We find these contentions to be unavailing.

We first set out the relevant parts of the three separate agreements Herren executed prior to beginning his exercise sessions with the personal trainer. Herren signed the first agreement ("Membership Agreement") at the time he joined the gym.[6] That agreement provided the following under a section entitled "WAIVER AND RELEASE LIABILITY":

---

[5] We note that both Mellor and SWE had been made parties prior to the entry of this order.

[6] The record shows that the membership was a family membership in the name of Herren's wife Sharon; however, Herren also signed the agreement.

4

The Club urges you and all members to obtain a physical examination from a doctor before using any exercise equipment or participating in any exercise class. All exercises, . . . shall be at the member's sole risk. Member understands that the agreement to use, or selection of exercise programs, methods and types of equipment shall be member's entire responsibility, and the Club shall not be liable to member for any claims, demands, injuries, damages, or actions arising due to injury to member's person or property arising out of or in connection with the use by member of the services, facilities, and premises of the Club. Member hereby holds the Club, its officers, owners, agents and employees harmless from all claims which may be brought against them by member or on member's behalf for any such injuries or claims.

Several weeks later, Herren executed two other documents – a "Fitness Assessment" agreement and a "Personal Training Program Service Agreement and Release of Liability" ("Personal Training"). The Fitness Assessment agreement contained the following waiver provision:

MEMBERS ACKNOWLEDGMENT, ASSUMPTION OF RISK AND FULL RELEASE FROM LIABILITY OF NONSTOP FITNESS:

Member acknowledges that the fitness assessment hereunder includes participation in the strenuous physical activities, including but not limited to, aerobics dance, weight training, stationary bicycling, various aerobic conditioning machines and various nutritional programs offered by Nonstop Fitness. Member agrees to assume all risks and

responsibility involved with participation in the physical activities. Member affirms that member is in good physical condition and does not suffer from any disability that would prevent or limit participation in physical activities. Member acknowledges that participation will be physically and mentally challenging, and member agrees that it is the responsibility of the member to seek competent medical or other professional advice regarding any concerns involved with the ability of member to take part in the Nonstop Fitness physical activities. Member agrees to assume any and all risks and take responsibility for not exceeding his/her own physical limits.

And the Personal Training agreement contained the following provision: "IMPORTANT NOTE: Buyer, . . . agrees [to] release . . . Nonstop Fitness, Inc. from liability due to participation. Buyer is urged to have this release agreement reviewed by an attorney before signing. By signing this Agreement, Buyer acknowledges that Buyer has read, understood and agreed with all terms and conditions of this agreement, after having the opportunity to have it reviewed by an attorney at the discretion of Buyer."

Further, the Personal Training agreement contained additional terms and provisions on the second page:

BUYER AGREES TO ASSUME ALL RISK AND RESPONSIBILITY INVOLVED WITH PARTICIPATION IN THE PHYSICAL ACTIVITIES. . . .

6

BUYER, . . . AGREES TO FULLY RELEASE TO NONSTOP FITNESS, INC. (AS WELL AS ANY OF ITS OWNERS, EMPLOYEES, OR OTHER AUTHORIZED AGENTS, INCLUDING INDEPENDENT CONTRACTORS) FROM ANY AND ALL LIABILITY, CLAIMS AND OR LITIGATION ACTIONS THAT BUYER MAY HAVE FOR INJURIES, DISABILITY OR DEATH OR OTHER DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO THE PERSONAL TRAINING/NUTRITIONAL PROGRAMS AND THE PHYSICAL ACTIVITIES.

Plaintiffs contend that these exculpatory clauses are ambiguous and that the trial court erred in granting summary judgment on their negligence claim on this basis. We disagree. The contractual provisions at issue constituted clear and express waivers and releases from liability. *My Fair Lady of Ga. v. Harris*, 185 Ga. App. 459, 460 (364 SE2d 580) (1987); *Lovelace v. Figure Salon*, 179 Ga. App. 51, 52 (1) (345 SE2d 139) (1986). Moreover, it is well established in this state that the inclusion of exculpatory clauses in a health or fitness club contract does not render the contract unenforceable as against public policy. E.g., *Hembree v. Johnson*, 224 Ga. App. 680, 681 (3) (482 SE2d 407) (1997); *Day v. Fantastic Fitness, Inc.*, 190 Ga. App. 46 (1) (378 SE2d 166) (1989); *My Fair Lady of Ga. v. Harris*, 185 Ga. App. at 460. And notwithstanding plaintiffs' contentions to the contrary, nothing about the

circumstances surrounding Herren's injuries distinguishes this case from previous cases in which we have held similar waivers valid and enforceable. This contention is thus without merit.

(b) Plaintiffs also argue that a material issue of fact exists concerning the identity of the parties to the agreement, specifically whether at the time the agreements were executed the gym was being operated under the corporate entity Nonstop Fitness, Incorporated or Club Management Services, Inc. d/b/a Nonstop Fitness Incorporated, and that the exculpatory clauses are unenforceable if it named the wrong corporate entity. In support of this contention, plaintiffs point to Sucher's deposition testimony, in which he said that he was unclear as to whether Club Management Services, Inc. d/b/a Nonstop Fitness Incorporated or Nonstop Fitness, Inc. was operating the health club. The trial court rejected the contention that this uncertainty brought into question the enforceability of the agreements, aptly noting that Herren was seeking to avoid the agreements on his ordinary negligence claims but that he was relying on the agreements, particularly the fitness assessment, as a basis for his gross negligence claim.

As to this issue, the record shows that Sucher testified in his deposition that the gym was initially operated under Club Management Services, Inc., but that at the time

8

Herren executed the agreements, the business was in a "transitional period where we were trying to expand and bring in the name of Nonstop Fitness." Because the business was in transition, Sucher testified that he was unsure about which entity was operating the business at the time Herren executed the agreements. However, Sucher later clarified that the transition must have been completed by the time Herren signed the agreements because the agreements he signed, including the Membership Agreement that had been approved by the state, see OCGA § 10-1-393.2 (b), contained the name Nonstop Fitness or Nonstop Fitness Inc.

Further, although Sucher could not initially remember if Nonstop Fitness had been incorporated or simply used as a brand name, the undisputed evidence shows that both Nonstop Fitness and Club Management Services were duly registered with the Georgia Secretary of State as "S," or closely held corporations, at the time the agreements were executed. Additionally, it is undisputed that the services provided at the facility remained the same or substantially the same throughout the relevant, relatively short, time period at issue here, that the facility operated at the same location during that time, and that the facility was at all relevant times a closely held corporation with the same individual ownership. See generally *Pet Care Professional Ctr., Inc. v. Bellsouth Advertising & Publishing Corp.*, 219 Ga. App. 117, 118-119

9

(1) (464 SE2d 249) (1995) (common law theory of continuous business enterprise); *Ney-Copeland & Assocs., Inc. v. Tag Poly Bags, Inc.,* 154 Ga. App. 256 (267 SE2d 862) (1980) (same); *Johnson-Battle Lumber Co. v. The Emanuel Lumber Co.*, 33 Ga. App. 517 (126 SE 861) (1925) (same). In light of the circumstances of this case, including plaintiffs' reliance on the agreements to support some of their claims, we find unavailing their contention that a jury must decide whether the proper corporate entity was named in the agreements.

(c) Lastly, Herren argues that the agreements are unenforceable because the proper state authority has not approved the contents of the agreements as required by OCGA § 10-1-393.2. Implicitly recognizing that, at least as to the Membership Agreement, the record shows otherwise,[7] Herren somewhat recasts this contention in his reply brief and contends instead that the agreement on file and approved by the state did not correctly identify the contracting party, and that, therefore, the contract which the gym defendants seek to enforce has never been approved by the state and

---

[7] Although there appear to be some difference in pagination and presentation between the document Herren signed and the one approved by the relevant state authority, the substance of the documents, including the relevant exculpatory language, is the same.

is void and unenforceable. However, for the reasons stated in Division (1) (b), we also find this argument to be without merit.

*Case No. A13A1117*

2. Plaintiffs also contend that the trial court erred by granting summary judgment to Barrin, the original seller of the dietary supplement, on their negligence and strict liability claims, specifically arguing that the trial court erred by finding that Mellor, the entity that purchased Barrin's assets, was the proper party in this case. We agree and reverse.

"Generally, a purchasing corporation does not assume the liabilities of the seller unless: (1) there is an agreement to assume liabilities; (2) the transaction is, in fact, a merger; (3) the transaction is a fraudulent attempt to avoid liabilities; or (4) the purchaser is a mere continuation of the predecessor corporation." (Citation and punctuation omitted.) *First Support Svcs., Inc. v. Trevino*, 288 Ga. App. 850, 852 (2) (655 SE2d 627) (2007). Barrin contends, and the trial court found, that Mellor assumed Barrin's liabilities pursuant to the following language in a Purchase Agreement executed on February 25, 2009:[8]

---

[8] For purposes of this appeal, we will assume that the supplement Herren obtained from his former co-worker had already been distributed for retail sale by that date.

> Buyer shall indemnify and hold harmless Seller from any liability arising from the actions of the business including but not limited to liabilities incurred, outstanding debts, harm caused by products and/or machinery owned or produced by the businesses.

Although this provision clearly required Mellor to indemnify and hold Barrin harmless, such an agreement is not synonymous with an agreement to assume another's liabilities. "Georgia law defines indemnity as 'the obligation or duty resting on one person to make good any loss or damage another *has incurred . . . .*' *Homes v. Clear Channel Outdoor, Inc.*, 284 Ga. App. 474, 477 (644 SE2d 311) (2007)." (Footnote omitted; emphasis supplied.) *Lanier at McEver, L.P. v. Planners and Engineers Collaborative, Inc.,* 284 Ga. 204, 206 (2) (663 SE2d 240) (2008). "This court has held that 'indemnity' means 'reimbursement, restitution, or compensation,' and Black's Law Dictionary uses a similar definition: Reimbursement or compensation for loss, damage, or liability in tort[.]" (Citation omitted.) *Old Republic Nat. Title Ins. Co. v. Darryl J. Panella, LLC,* 319 Ga. App. 274, 276 (734 SE2d 523) (2012). And the provision at issue specifically refers to indemnification for liabilities "incurred," which clearly refers to liability that has already been fixed or established.

*Gwinnett Hosp. Sys., Inc. v. Massey*, 220 Ga. App. 334 (469 SE2d 729) (1996), which both Barrin and the trial court rely on, actually illustrates the difference

12

between an indemnification clause and an assumption of liabilities. In that case, unlike the case at hand, there was "an express agreement between the [Buyer] and the [Seller] recited in broad, unambiguous language that the [Buyer] assumed all liabilities and obligations" of the Seller. Because of this language, we specifically rejected the Buyer's arguments that it was "merely an indemnitor of the [Seller], subject to suit only if liability against the [Seller] is found first." Id. at 337. Thus, in that case, we clearly distinguished between agreements that create an assumption of liabilities and provisions that require indemnification.

Accordingly, pursuant to the common definition of the term and the express language of the Purchase Agreement, we find that although Mellor may have an eventual duty to indemnify Barrin, Mellor did not assume Barrin's liabilities. Thus, Barrin is a proper party to this case, and the trial court's order granting summary judgment to Barrin must be reversed.

*Judgment affirmed in Case No. A13A1076; judgment reversed in Case No. A13A1117. Andrews, P. J., and Dillard, J., concur.*