**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 29, 2016**

# In the Court of Appeals of Georgia

A15A2059. ASHLINE v. MARINAS USA, L.P. d/b/a AQUALAND
       MARINA.

McFADDEN, Judge.

John Ashline initially brought this suit against Marinas USA, L.P. (Marinas) for a tort allegedly arising out of its operation of Aqualand Marina. Marinas defaulted. Ashline now appeals the trial court's order denying his motion to add or substitute Flagship Marinas Acquisition, LLC and Flagship Aqualand, LLC (collectively, Flagship) as Marinas's successors-in-interest. He argues that Flagship, which purchased Aqualand Marina from Marinas, contractually agreed to assume liability for all claims against Marinas and thereby assumed liability to him for his default judgment. We find, however, that the language on which Ashline relies

merely released Marinas from certain liabilities. Flagship, therefore, did not assume liability for Ashline's default judgment. Accordingly, we affirm.[1]

Ashline secured a default judgment against Marinas on May 4, 2012, for the conversion of his houseboat, which had occurred seven years earlier, on or about July 15, 2005. A few weeks before that alleged conversion, on May 26, 2005, Marina had entered into a contract with Flagship for the sale of a marina.

After obtaining his default judgment against Marinas, Ashline filed a motion in the trial court to add or substitute Flagship to the litigation, arguing that Flagship had agreed in its contract with Marinas to "assume and pay the obligations that were formerly attributable to Marinas." The trial court denied that motion, finding that "[Flagship] did not assume liability for [Marina's] claims in the actions, all of which arose or accrued prior to the date on which [Flagship] assumed ownership of their assets and liabilities caused by the defendant to paid entities." We review the trial court's construction of the contract as a question of law, subject to de novo review. See *Etowah Envtl. Group v. Advanced Disposal Servs.*, 297 Ga. App. 126, 127 (676 SE2d 456) (2009).

1. *Standing.*

---

[1] The motion of appellee for sanctions is hereby denied.

2

Although Ashline was not a party to the contract between Flagship and Marinas, he still has standing to bring suit. "The claim here is for [conversion], not for damages resulting from a breach of contract between two other parties, and the action was not brought to enforce a contract." *Gwinnett Hosp. Sys. v. Massey*, 220 Ga. App. 334 (469 SE2d 729) (1996). Here, Ashline has argued only that under the agreement, Flagship assumed Marina's legal obligations, and he is therefore entitled to bring suit against Marina. See *MCG Health v. Nelson*, 270 Ga. App. 409, 411 (1) (606 SE2d 576) (2004) ("The plaintiff merely recognized that, under the clear terms of the contract, [acquirer] was liable for pre-existing liabilities relating to the operations it took over from the former operator. In other words, [acquirer] took responsibility for its predecessor's torts. And given this assumption of liabilities, the plaintiff was entitled to bring suit directly against [acquirer].")

2. *Terms of the contract.*

Ashline's first enumeration of error is that the trial court misconstrued the contract. He argues that under the contract for the sale of the marina between Flagship and Marinas, Flagship assumed all of Marinas liabilities, including his default judgment.

As to contract construction generally:

3

Construction of a contract, at the outset, is a question of law for the court. And such construction involves three steps: first, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

*Holcim (US) v. AMDG,* 265 Ga. App. 818, 820 (596 SE2d 197) (2004) (citations and punctuation omitted).

As to the particular issue before us, the general rule is that "a purchasing corporation does not assume the liabilities of the seller unless: (1) there is an agreement to assume liabilities; (2) the transaction is, in fact, a merger; (3) the transaction is a fraudulent attempt to avoid liabilities; or (4) the purchaser is a mere continuation of the predecessor corporation." *First Support Servs. v. Trevino,* 288 Ga. App. 850, 852 (2) (655 SE2d 627) (2007) (citation omitted). Here, none of these circumstances apply.

In support of his argument that Flagship assumed all the liabilities of Marinas, Ashline cites assignment provisions in three contract documents that assign certain

4

specific liabilities to Flagship, as well as two release provisions in the main contract. But none of those provisions require Flagship to assume liability for a judgment against Marina arising out of events that occurred *prior to* the closing date.

Ashline's judgment is outside the scope of the assignment provisions. The first assignment provision is in a document entitled "Assignment of Lease." That is the document under which Flagship assumed the master property lease for the marina. Its language relating to assumption of liabilities reads, "Assignee assumes the payment and performance of, and agrees to pay, perform and discharge, all the debts, duties and obligations to be paid, performed, or discharged from and after (but not before) the effective date hereof by the lessee." The next assignment provision cited by Ashline is in a document entitled "Assignment and Assumption of Leases." In this document, Flagship assumes "all of Assignor's obligations under the Leases and with respect to the Deposits arising or accruing from and after the Closing Date." The final assignment provision cited by Ashline is in a document entitled "Assignment and Assumption of Contracts, Warranties and Guarantees and other Intangible Property." In that document, Flagship assumes Marinas' obligations "under the Contracts arising or accruing after the Closing Date". All of the liabilities Flagship assumed by executing these documents arose prior to the closing date.

5

The two release provisions found in the main contract likewise do not amount to an assumption of all of Marina's liabilities on the part of Flagship. Ashline contends that under §§ 4.3 and 4.7 of the contract, Flagship assumed liability for all of Marinas' liabilities, including Ashline's Judgment. But these two provisions are narrow in scope, and merely serve to limit Marina's liabilities to Flagship under certain circumstances. They do not amount to an assumption of all of Marina's liabilities. The release in § 4.3 of the contract reads as follows:

> [N]o seller shall have (and each Seller is exculpated and released from any) liability whatsoever with respect to any [Claims] *under. . .any of the representations and warranties contained in this agreement or in any closing document*, except to the extent (and only to the extent) that the aggregate amount of all claims for breach of such Seller's representations and warranties . . . exceeds one hundred thousand dollars. (emphasis supplied) The other release Ashline points to reads as follows:

> [Flagship]. . .waives its right to recover from, and forever releases and discharges, and covenants not to sue [Marina] with respect to any and all Claims, whether direct or indirect, known or unknown, foreseen or unforeseen, *that may arise on account of or in any way be connected with any Property* including the physical, environmental, or structural condition of the related Real Property or any law or regulation applicable thereto[.]

6

(emphasis supplied)

More fundamentally, Georgia law is clear that a release is not necessarily an assumption of liabilities.

> Gwinnett Hosp. System, Inc. v. Massey, 220 Ga. App. 334 (469 SE2d 729) (1996), which [Ashline] rel[ies] on, actually illustrates the difference between an indemnification clause and an assumption of liabilities. In that case, unlike the case at hand, there was "an express agreement between the Buyer and the Seller recited in broad, unambiguous language that the Buyer assumed all liabilities and obligations" of the Seller. Because of this language, we specifically rejected the Buyer's arguments that it was merely an indemnitor of the Seller, subject to suit only if liability against the Seller is found first. Thus, in that case, we clearly distinguished between agreements that create an assumption of liabilities and provisions that require indemnification.

*Heren v. Sucher*, 325 Ga. App. 219, 225 (2) (750 SE2d 430) (2013). The term "release" is not synonymous with either "assumption" or "indemnification." We therefore turn to dictionaries for the plain meaning of these terms. *Akron Pest Control v. Radar Exterminating Co.*, 216 Ga. App. 495, 497 (1) (455 SE2d 601) (1995) (noting that courts may turn to a dictionary for the plain, ordinary, and popular sense of a word in interpreting contracts). The applicable definition of "release" is "[l]iberation from an obligation, duty, or demand; the act of giving up a right or claim

7

to the person against whom it could have been enforced." Black's Law Dictionary (10th ed. 2014). "Indemnify" is defined as, "[t]o reimburse (another) for a loss suffered because of a third party's or one's own act or default." Black's Law Dictionary (10th ed. 2014). The applicable definition of "assumption clause" is a "provision by which the transferee of an instrument agrees to assume an obligation of the transferor." Black's Law Dictionary (10th ed. 2014). The parties' contract does not adopt different definitions.

In short, Flagship only released Marinas from specified liabilities and assumed specified contractual obligations in its purchase of the marina. None of those provisions override the general rule that liabilities are not assumed by operation of law. *First Support Servs.,* 288 Ga. App. at 852 (2).

3. *Failure to add defendant.*

Ashline's second enumeration of error is that the trial court abused his discretion by failing to add Flagship as a defendant in Fi. Fa. As the trial court did not err in its construction of the contract, this enumeration is also without merit.

*Judgment affirmed. Ellington, P. J., and Dillard, J., concur.*

8